# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JACQUELINE SUMMY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-00846-CV-NKL-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Jacqueline Summy challenges the Social Security Commissioner's denial of her application for supplemental security income benefits under Title II of the Social Security Act, 42, U.S.C. §§ 401, *et. seq.*, and XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et. seq.*

Summy argues that the Administrative Law Judge ("ALJ") erred by; (1) failing to give treating nurse-practitioner Sisk's opinion the same weight as an acceptable medical source; (2) selectively addressing only the portion of Ms. Sisk's opinion that did not support a finding of disability; (3) failing to mention the opinion of treating licensed professional counselor Coggins; (4) affording significant weight to non-examining state agency physicians; and (5) failing to include specific mental limitations in her hypothetical to a vocational expert. Because the Court finds some of these argument persuasive, the Court reverses the ALJ's decision and remands the case for further consideration.

1

## I. Background

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Plaintiff, Jacqueline Summy, filed an application for a period of disability, disability insurance benefits, and supplemental social security income, on July 10, 2008. In her Disability Report, she alleged disability due to bipolar disorder and a history of thyroid cancer status post surgery. An ALJ held a hearing on June 14, 2010, which ended in a denial of all benefits for Summy.

Summy began seeing Cindy Coggins, a counselor, in May 2008 with a diagnosis of severe bipolar disorder with rapid cycling and without psychotic features. (Tr. 297-301, 354-63). Treatment through October 2008 revealed depressed and/or anxious mood, but no hallucinations or suicidal ideation. (Tr. 267-96, 364-81). On February 18, 2009, Ms. Coggins also completed a mental impairment questionnaire. (Tr. 430-33). The counselor reported a current GAF of 55, with current symptoms of poor memory, sleep disturbance, mood disturbance, perceptual disturbance, decreased energy, mania, obsessions or compulsions, persistent irrational fears, hostility and irritability, occasional suicidal ideation, anhedonia, illogical thinking, flashbacks, inappropriate affect, difficulty concentrating, intermittent paranoia, feelings of worthlessness, social withdrawal, and persistent anxiety. (Tr. 430). Ms. Coggins checked boxes indicating Summy had moderate limitations in maintaining social functioning; extreme deficiencies in concentration, persistent or pace; and continual episodes of deterioration or decompensation. (Tr. 431). Ms. Coggins also checked

---

[1] Portions of the parties' briefs are adopted without quotation designated.

2

boxes reporting Summy had repeated episodes of decompensation within 12 months, each lasting two weeks; such marginal ability to adjust that even a minimal increase in mental demands would result in decompensation; and a history of an inability to function outside of a highly supportive living arrangement for two to three years. (Tr. 431). Ms. Coggins concluded that Summy would be absent from work more than four days per month and had been unable "to function in a job for at least the past 2 years." (Tr. 432). Ms. Coggins acknowledged that her response that these symptoms were present since August 2007 was based on Summy's reports because Ms. Coggins had only started seeing Summy in May 2008. (Tr. 433).

On February 16, 2009, Pamela Sisk, a treating nurse practitioner, completed a mental impairment questionnaire. (Tr. 437-40). Ms. Summy reported a current GAF of 55, with current symptoms of sleep disturbance, mood disturbance, emotional lability, decreased energy, hostility and irritability, suicidal ideation, anhedonia, inappropriate affect, and difficulty concentrating. (Tr. 437). Ms. Sisk checked boxes indicating Summy had no restrictions of activities of daily living; moderate difficulties in maintaining social functioning; marked deficiencies in concentration, persistence or pace; and one or two episodes of decompensation. (Tr. 438). Ms. Sisk also checked boxes reporting Summy had repeated episodes of decompensation within 12 months, each lasting two weeks; and such marginal ability to adjust that even a minimal increase in mental demands would result in decompensation. (Tr. 438). She reported that Summy's mood lability would prevent her from working on a sustained basis and she would be absent about four days per month. (Tr.

3

439). Ms. Sisk acknowledged that she did not know whether these symptoms had persisted since August 2007, because she initially evaluated Plaintiff in June 2008. (Tr. 440).

In the ALJ's decision, the ALJ found that Summy had the following severe impairments: bipolar disorder and post thyroid carcinoma with thyroidectomy. The ALJ stated that she gave "significant weight" to the opinion of treating nurse practitioner Sisk, who concluded that Summy's "bipolar disorder posed no limitations on her ability to do activities of daily living." [Doc. # 5-3 at 16]. The ALJ noted that Ms. Sisk was not an "acceptable medical source" but that her opinion was "consistent with the medical evidence of record." *Id*. The ALJ did not mention any other conclusion by Ms. Sisk. The ALJ stated that she gave "significant weight" to the opinion of State Agency consulting physician Sandip Sen, M.D., who concluded that, with regard to social functioning, Summy had "moderate difficulties only in her ability to accept instructions and to respond appropriately to criticism from supervisors, but was not otherwise significantly limited in her ability to interact socially." [Doc. # 5-3 at 16]. The ALJ stated that she gave "probative weight" to the opinion of State Agency psychological consultant Margaret Sullivan, Ph.D, who concluded that Summy's mental health impairment was "severe, but was not expected to last 12 months with continued treatment compliance." [Doc. # 5-3 at 19]. The ALJ did not mention the opinions of treating counselor Coggins.

The ALJ found that Summy could perform simple, unskilled, routine, low-stress work that required only minimal interaction with co-workers and brief and superficial contact with the general public, and did not involve significant change or adaptation. (Tr. 17). The ALJ

4

found Summy's impairments would not preclude her from performing her past relevant work in food service, nor would her impairments prevent her from performing other work existing in substantial numbers in the national economy. (Tr. 19-21).

**II.     Analysis**

In reviewing a denial of disability benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007).

**A.     Whether the ALJ Gave Appropriate Weight to the Opinions of Ms. Sisk**

Summy argues that "the ALJ's dismissal of Ms. Sisk's opinion because she was not 'an acceptable medical source' is not consistent with the Commissioner's own regulations." [Doc. # 7 at 17]. Summy provides argument and authority suggesting that an ALJ *may* rely on such sources, *see* 20 C.F.R. § 404.1513(d), but Summy does not provide any authority suggesting any circumstance in which an ALJ *must* do so. Rather, Summy simply claims without citation that the ALJ's failure to give full weight to Ms. Sisk's opinion was "reversible error." [Doc. # 7 at 17]. Further, the ALJ's decision, as well as Summy's other arguments, make clear that the ALJ did not dismiss Ms. Sisk's opinion, but rather gave significant weight to at least a portion of that opinion. Thus, the real issue here is not whether the ALJ gave appropriate weight to Ms. Sisk's opinion as a whole, but, rather, whether the ALJ, having decided to give significant weight to a portion of Ms. Sisk's opinion impermissibly ignored another portion of Ms. Sisk's opinion. Because the authority provided

5

by Summy suggests that the decision whether to give weight to Ms. Summy's opinion was squarely within the discretion of the ALJ, the Court rejects Summy's argument on this point.

## B. Whether the ALJ Selectively Relied on the Opinions of Ms. Sisk

Summy argues that the ALJ erred in giving significant weight to the portion of Ms. Sisk's opinion that weighed against a finding of disability, while completely ignoring the portion of Ms. Sisk's opinion that weighed toward a finding of disability. "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *see also Ellis v. Barnhart*, 392 F.3d 988, 1001-02 (8th Cir. 2005) (reversing the ALJ and rewarding benefits, in part because "[t]he ALJ...ignored much of the record and selectively chose sentences or paragraphs to support his view.").

The Court agrees with Summy that the ALJ selectively discussed Ms. Sisk's opinion in a way that was not proper. For example, the ALJ explicitly stated that she gave "significant weight" to Ms. Sisk's opinion that Summy's bipolar disorder would pose no limitations on her activities of daily living. [Doc. # 5-3 at 16]. But the ALJ failed to mention that Ms. Sisk also concluded that Summy's concentration, persistence, and pace would be "markedly limited." (Tr. 439). The Commissioner argues that this was not error because even if the ALJ accepted this conclusion, Summy still would not be *per se* disabled, citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B. This argument supports the conclusion that it would be inappropriate to reverse the ALJ and award benefits. But it does not undermine the conclusion that it is appropriate to remand, since the Court cannot determine whether the

6

ALJ discounted the portions of Ms. Sisk's opinion that the ALJ did not discuss and, if so, why. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).

The ALJ also ignored Ms. Sisk's conclusion that Summy is disabled (Tr. 556). The Commissioner correctly argues that the ALJ did not owe deference to this conclusion. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). But that does not mean the ALJ was free to give significant weight to Ms. Sisk's conclusion that Summy's bipolar disorder posed no limitations to her activities of daily living and to do so without even addressing that this conclusion squarely conflicted with Ms. Sisk's overall conclusion of disability. The Court finds that the ALJ erred by selectively discussing Ms. Sisk's opinions, and the Court reverses the ALJ's decision and remands on this basis.

### C. Whether the ALJ Erred by Failing to Mention the Opinion of Ms. Coggins

Summy argues that the ALJ erred by failing to mention the opinion of treating licensed professional counselor Coggins. Summy discusses in detail the treating relationship between Coggins and Summy, as well as Coggins's conclusions, but never provides any authority or analysis for why the ALJ was required to discuss Coggins's opinions in the ALJ's decision. Thus, as with Ms. Sisk, Summy has not demonstrated that the ALJ was required to consider Ms. Coggins's opinion, which admittedly does not come from an acceptable medical source.

### D. Whether the ALJ Erred in Giving Significant Weight to the Opinions of Non-Examining State Agency Physicians

Summy argues that the ALJ erred in giving "significant weight" to the non-treating state-agency opinions of Sandip Sen, M.D., and Margeret Sullivan, Ph.D, especially to the

7

extent these opinions conflicted with the opinions of treating sources. "The regulations specifically provide that the opinions of non-treating physicians may be considered." *Hacker v. Barnhart*, 459 F.3d 934, 939 (8th Cir. 2006) (citing 20 C.F.R. § 404.1527(f)). Further, "ALJs are not obliged to defer to treating physician's medical opinions unless they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008) (internal quotes omitted).

Summy does not explain why the ALJ's giving significant weight to the opinions of Drs. Sen and Sullivan was inappropriate under this standard. Rather, Summy merely cites a case from 1973 expressing a preference for the opinions of treating sources, and then explains that Ms. Sisk and Ms. Coggins had much more interaction with Summy than did Drs. Sen and Sullivan. *See Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1973). The ALJ specifically stated that she gave significant weight to the opinions of Drs. Sen and Sullivan because of their medical expertise and because their opinions were "consistent with the medical evidence of record." [Docs. ## 5-3 at 17; 5-3 at 19]. The Commissioner also points out that Ms. Sisk provided her opinion just four days after Summy was hospitalized for her bipolar disorder, and that treatment records for several months after that period showed a consistently improved condition. For theses reasons, the Court finds substantial evidence exists on the record for the weight given the opinions of Drs. Sen and Sullivan by the ALJ.

**E.     Whether the ALJ Erred by Failing to Provide Specific Mental Limitations**

8

### in her Hypothetical to the Vocational Expert

Summy argues that the ALJ's hypothetical to the vocational expert – which limited Summy to simple, unskilled work with superficial contact, minimal interaction with the general public, and routine, low-stress work without significant change or adaptation – did not adequately capture the consequences of the ALJ's finding that Summy had moderate difficulties in concentration, persistence, or pace. [Doc. # 5-3 at 94]. "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997).

The Eighth Circuit has previously held that a mere limitation to "simple work" in a hypothetical to a vocational expert did not adequately represent a claimant's moderate difficulties in these same areas, which "would cause problems on an ongoing daily basis, regardless of what the job required from a physical or skill standpoint." *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996). That court thus remanded with instructions to include specific reference to the claimant's limitations in concentration, persistence, and pace in the hypothetical to the vocational expert. *Id*. On the other hand, the Commissioner provides an Eighth Circuit case finding that deficiencies of concentration, persistence, or pace are adequately captured by a hypothetical "concerning someone who is capable of doing simple, repetitive, routine tasks", *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2011).

The *Howard* court relied for this point on *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir.1997). The *Brachtel* court held that an ALJ's finding that the claimant would "often"

manifest "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner" was adequately captured by the ALJ's hypothetical in that case. *Id.* at 420-21 (internal quotes and some capitalization omitted). The Eighth Circuit noted that the ALJ's hypothetical was "scantly more than what was included in the *Newton* hypothetical" but that it was sufficient to avoid remand because "the ALJ's hypothetical specifically limited concentration (work 'which does not require close attention to detail') and pace ('should not work at more than a regular pace.')." *Id.* at 421.

The Court finds the ALJ's hypothetical in this case substantially similar to the hypothetical in *Howard*, and Summy has not argued otherwise. It thus appears that the ALJ adequately addressed Summy's limitations in the ALJ's hypothetical to the vocational expert. Although the vagueness of the ALJ's hypothetical would not be reversible error on its own, the concerns expressed by the Eighth Circuit in *Newton* are still present in this case. Because the Court is already remanding this case on other grounds, the Court instructs the ALJ to directly address Summy's limitations in concentration, persistence, and pace in a new hypothetical on remand.

Finally, Summy argues that the ALJ erred in describing Summy's limitations merely in "general terms", citing *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999). Specifically, Summy argues that it was improper for the ALJ to find that Summy was not capable of work that involves "significant changes or adaptations" without describing what those adaptations might be. Summy's argument is not convincing. The court in *Pfitzner* addressed an ALJ decision that "articulated only the outermost contours of [the claimant's] residual functional

10

capacity." *Id*. at 568. For example, the Eighth Circuit was unsure from that ALJ's decision whether the ALJ found that the claimant had any physical limitations. *Id*. The residual functional capacity assigned to Summy by the ALJ in this case does not approach that level of generality. Summy provides no other authority for this argument. In the absence of any such authority, the Court thus declines to require any further specificity from the ALJ.

Further, the Court is not persuaded by Summy's argument that the generality of the ALJ's finding could support a finding that Summy is "prohibited from performing even two-step jobs", in which case "the number of jobs available for her to perform would be significantly reduced." [Doc. # 7 at 21]. Although it is unclear precisely what Summy means by this point, the Commissioner convincingly interprets this statement to be referring to jobs with a Specific Vocational Preparation rating of two, and notes that the ALJ specifically stated that Summy was capable of jobs with a Specific Vocational Preparation level of one or two. [Doc. # 5-3 at 18]. Summy's argument thus fails.

### III.   Conclusion

Accordingly, it is hereby ORDERED that Jacqueline Summy's Petition [Doc. # 4] is GRANTED. The decision of the ALJ is REVERSED and remanded for reconsideration consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY

11

Dated:  April 30, 2012  
Jefferson City, Missouri

United States District Judge